**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

IN RE: COEYMANS' MARINE TOWING, LLC,      1:24-CV-737
                                             (MAD/DJS)

                            Petitioner.

**APPEARANCES:**                              **OF COUNSEL:**

DENLEA & CARTON LLP                 CRAIG M. CEPLER, ESQ.
Attorneys for Petitioner
2 Westchester Park Drive, Suite 410
White Plains, New York 10604

SULLIVAN PAPAIN BLOCK MCGRATH      FRANK V. FLORIANI, ESQ.
COFFINAS & CANNAVO
Attorneys for Claimant/Respondent Santos
120 Broadway – 27th Floor
New York, New York 10271

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

       Petitioner and Claimant seek a ruling on the application of the work product doctrine regarding two investigative reports prepared by Michael Walters at the request of Petitioner's insurance company, Travelers Property Casualty Company of America ("Travelers"). Dkt. Nos. 24 & 25. The subject incident occurred at the Port of Coeymans on October 28, 2023, at which time the Claimant Ryan Santos, a deckhand on the Petitioner's tugboat "CMT OTTER" was seriously injured when he was crushed between the tug and a flexifloat barge. *See* Dkt. No. 1, Compl.

       Petitioner reported the incident to its insurance company, Travelers, which then commissioned an investigation by an outside investigator, Mr. Michael A. Walters of the

Walters Nixon Group, Inc.  Mr. Walters wrote to Claimant's counsel, Mr. Floriani, noting that he had been retained by Travelers, who "will be paying Santos' medical bills, and Santos himself."  Dkt. No. 24-2.[1]  The letter also indicated that Mr. Walters wished to interview Mr. Santos "to learn the nature and extent of his injuries, his plans for following-up treatment after he's been discharged from the hospital, whether he needs help in arranging for that follow-up treatment, and so forth.  We also want to ask him questions about the incident itself."  *Id.*

Ultimately, Mr. Walters prepared two letters to Travelers, one dated December 29, 2023, and the second one dated February 12, 2024.  The Court has reviewed those letters *in camera.*  The December 29, 2023, letter provides photographs of the CMT OTTER, as well as another tug CAROLINE M.  It also has photographs of the relevant dock, as well as the subject barge. The December letter relates specifics of the interview Mr. Walters conducted of the CMT OTTER Captain, Charles Foster.  That letter also refers to the Ravena Rescue Squad records.  The February 12, 2024, letter relates primarily to an interview of CMT OTTER deckhand Dan Nazario who was on board at the time of the incident.  It also references a draft bill from Albany Medical Center Hospital for an amount over $491,000, covering the period from October 28 through December 7, 2023.

Claimant/Respondent Ryan Santos, through counsel, maintains that the letters are discoverable because they were not prepared exclusively for, and in response to,

---

[1] This is presumedly because of the tugboat owner's obligation to provide maintenance and cure to the injured deckhand independent of any showing of fault.

imminent litigation.  Dkt. No. 24.  Claimant notes that the state court action was not in fact filed until February 19, 2024, a week after the second Walters letter.  *Id.*

Petitioner's position is that the two letters were prepared in anticipation of litigation and are therefore privileged under the work product doctrine.  Dkt. No. 25.  In support of that claim, Petitioner's counsel has submitted an affirmation of Attorney Robert Milana, a senior claims adjuster for Travelers, who affirms that the Walters investigation was requested in anticipation of a pending lawsuit based upon the obvious and severe nature of the injuries that Claimant sustained.  Dkt. No. 25-1.

 Federal Rule of Civil Procedure 26(b)(3) codifies the work product doctrine that has been recognized in Federal Court since 1954. Different in scope than the attorney-client privilege, the work product doctrine arises from the connected assumption "that an attorney cannot provide full and adequate representation unless certain matters are kept beyond the knowledge of adversaries."  American Bar Ass'n, Section of Litigation, The Attorney-Client Privilege and the Work-Product Doctrine, 5th Ed. at p. 791.  The doctrine is based upon the Supreme Court decision of *Hickman v. Taylor*, a wrongful death action that arose out of the sinking of a tugboat. Counsel for the decedent sought to obtain statements by witnesses and survivors of the incident, but the tugboat owners and their counsel refused to provide those statements, a decision that ultimately resulted in them being held in contempt. *Hickman v. Taylor*, 329 U.S. 495, 500 (1947).  The United States Supreme Court upheld the Third Circuit's decision not to require production of the statements, noting that it is essential to a lawyer's work that there be recognized a "certain degree of privacy" so that an attorney can consider theories, assemble information, and

- 3 -

plan strategy without undue intrusion. *Id.* at 510-511. "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Id.* at 510.

"[T]o be protected as work product, the materials must be (1) documents or tangible things, (2) that were prepared in anticipation of litigation, and (3) were prepared by or for a party, or by or for his representative. *Weber v. Paduano*, 2003 WL 161340 at * 3 (S.D.N.Y. 2003) (citations omitted). Documents prepared in anticipation of litigation are those that, "in light of the nature of the document and the factual situation in the particular case . . . can fairly be said to have been prepared or obtained *because of* the prospect of litigation. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (internal quotation omitted) (emphasis in original). As the Second Circuit has further noted, however, documents that were prepared in the ordinary course of a business or that "would have been created in essentially similar form irrespective of the litigation" are not protected by the work product doctrine. *Id.*

Determination of the work product doctrine in connection with insurance cases can oftentimes be particularly difficult. As a general rule, an insurance company's investigation "undertaken to determine whether there is coverage, whether the claim should be paid, and whether a subrogation claim could be pursued, is not undertaken in anticipation of litigation." *Selective Ins. Co. of Am. v Swarey*, 2011 WL 240750 at *1 (W.D.N.Y. Jan 24, 2011) (quoting *Nicklasch v. JLG Indus., Inc.*, 193 F.R.D. 568, 570 (S.D. Ind. 1999)). The analysis of the matter is inherently fact specific, and the party resisting disclosure based upon the work product doctrine has the obligation to establish,

by objective evidence, that it anticipated litigation at the time the document was created and that such document would not have been created in essentially the same way irrespective of the litigation. *United States v. Adlman,* 134 F.3d at 1202.

In the present case, the Court concludes that the two letters are in fact covered by the work product doctrine. This is so for several reasons. First, the significant nature of the injury (almost $500,000 in medical expenses accrued within four months of the incident), coupled with the fact that the injured seaman had retained counsel very soon after the incident, is a sufficient predicate for Travelers' belief that litigation was imminent. This fact was borne out by the filing of the state court action within days of the investigative report. That the investigator was retained by Petitioner's insurance company, rather than by litigation counsel, is not determinative. FED. R. CIV. P. 26. ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"). Further, the issue of coverage under the policy was not the subject of the investigation. Indeed, the initial letter noted that Travelers would be providing payment to Claimant. The scope of the letters, including mental impressions of witnesses' demeanor and believability, relate primarily to the issue of liability in connection with the anticipated personal injury claim. *See Gray v. Denny's Corporation*, 2010 WL 11566295 at *2-3 (N.D.N.Y. May 19, 2010) (finding that reports of witness statements obtained by the Denny's investigator Gallaher Bassett Services, Inc, which included mental impressions, conclusions, and opinions, were covered by the work product doctrine). Finally, Travelers has provided an affidavit

from its adjuster, who himself is an attorney, indicating that the investigative reports were prepared in connection with anticipated litigation.

It should be noted, however, that the work product doctrine is not an absolute bar to disclosure. The two letters in question deal almost exclusively with the interview of two primary witnesses, the ship's captain Charles Foster and its deckhand Dan Nazario. Discovery has just begun, and those witnesses will likely be subject to deposition questioning. If the witnesses cannot be located, do not cooperate, or their memory is somehow faulty, a sufficient showing may well be made for the need to produce their contemporaneous statements to Mr. Walters.

For the foregoing reasons, the Motion to Compel production of the December and January letters of the insurance companies' investigator is denied at this time. Counsel is granted leave to renew this request if he is able to show both need and prejudice in light of developments in the discovery process.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Claimant's Letter Motion to require production by Petitioner of the December 29, 2023, and February 12, 2024, Investigative Reports of the Walters Nixon Group, Inc., (Dkt. No. 24) is hereby denied with leave to renew if events warrant; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**IT IS SO ORDERED**.

Dated:  October 15, 2025
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge